■ In the Matter of WOMAN'S CHRISTIAN ASSOCIATION OF JAMESTOWN, Petitioner, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents.—Levine, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Health which denied petitioner's request to initiate a cardiac catheterization service.

Petitioner is a not-for-profit organization operating a general hospital in the City of Jamestown, Chautauqua County, servicing the southern tier counties of Allegany, Cattaraugus

and Chautauqua. In 1985, petitioner applied to respondent State Department of Health (hereinafter the Department) pursuant to Public Health Law § 2802 for approval of its installation of a cardiac catheterization service and laboratory at the hospital. In accordance with Public Health Law § 2802 (2), the Department forwarded the application to the Health Systems Agency of Western New York (hereinafter HSA) and to the State Hospital Review and Planning Council (hereinafter SHRPC). Both SHRPC and HSA found a need for the facility in the Department's western New York region and recommended approval. However, the Department's Cardiac Advisory Committee, after an on-site visit, recommended disapproval of the facility as not being sufficiently needed in the western region. Thereafter, the Department notified petitioner that its application had been disapproved. At the same time, the Department approved the application of Mercy Hospital, in the City of Buffalo, also part of the western region, for the construction of a similar cardiac catheterization facility.

Petitioner then availed itself of its right to a public hearing (see, Public Health Law § 2802 [5]), which was limited to the issue of whether there existed a public need for the proposed facility at its hospital. Following the hearing, an Administrative Law Judge (hereinafter ALJ) found that all of the criteria for approval of petitioner's application set forth in the Department's regulations (10 NYCRR 708.5 [c]) had been met and that there was a public need for a catheterization unit in the Jamestown area. Respondent Commissioner of Health (hereinafter the Commissioner), however, rejected several of the ALJ's findings and made new findings. Specifically, the Commissioner found that petitioner failed to meet all of the criteria for appropriateness set forth in the regulations because "95% of the total population of the [w]estern [r]egion is within three hours mean surface travel time of facilities which perform adult cardiac catheterizations" (see, 10 NYCRR 708.5 [c] [2] [i]). The Commissioner concluded that there was no public need for a cardiac catheterization laboratory at petitioner's hospital. Petitioner then brought this CPLR article 78 proceeding to review the Commissioner's denial of its application.

On review, petitioner contends that the Commissioner based his determination solely on the fact that there were existing cardiac catheterization facilities in the Buffalo area and a similar unit at a hospital in Erie, Pennsylvania (to which petitioner's physicians sent most of their patients), all within three hours mean surface travel time of 95% of the popula-

tion in the Department's western region, including those patients served by petitioner's hospital. While petitioner does not dispute the accuracy of this finding, it claims that the Commissioner was arbitrary and capricious in rigidly applying this factor, without regard to other facts and circumstances, to conclude that no public need existed for a cardiac catheterization facility at petitioner's hospital (citing *Matter of Sturman v Ingraham,* 52 AD2d 882). We disagree.

In addition to the finding regarding the existence of catheterization facilities at hospitals accessible to petitioner's patient population within three hours' driving time, the Commissioner made other findings clearly pertinent to the issue of the need for a cardiac catheterization facility at petitioner's location. Notably, the Commissioner found that the cardiac catheterization unit at the hospital in Erie, Pennsylvania, was readily accessible to petitioner's patient population with minimum delay, at a distance of 55 miles from Jamestown; that any significant delay in admissions for cardiac catheterizations at the various existing facilities in Buffalo will be alleviated by the addition of the unit at Mercy Hospital; and that arrangements are in place for the expeditious transportation to and handling of acute cardiac surgical emergency cases at a cardiac surgical center without more delay than the time it would take to assemble a cardiac surgery team and the necessary equipment regardless of the location of the catheterization and cardiac surgery facilities. Of added significance on the question of need, the Commissioner found that of the potential patient population for cardiac catheterization services at petitioner's hospital, 43% would still have to be referred for the procedure to other hospitals having more complete surgical and other cardiac treatment facilities. Contrary to petitioner's contention, all of these findings were supported by evidence in the record or reasonable inferences from such evidence.

Moreover, the Commissioner's interpretation of the regulations so as to permit consideration of the Erie, Pennsylvania, catheterization unit as a facility accessible to the region's population (despite its location outside the State) was rational and entitled to deference *(see, Matter of Chambery v Axelrod,* 101 AD2d 610, 612). Likewise, since he had evidentiary support in the record, it was within the Commissioner's discretionary power to reject the findings of the ALJ and substitute new findings *(see, Matter of Simpson v Wolansky,* 38 NY2d 391, 394; *see also, Matter of Wiggins v Board of Educ.,* 60 NY2d 385, 388).

Taken together, the foregoing findings demonstrate that the Commissioner did not rigidly or mechanically apply the accessibility of other existing facilities criterion contained in the regulations in order to deny petitioner's application, but considered this criterion in conjunction with other facts and circumstances to conclude that there was not a public need for petitioner's proposed cardiac catheterization facility *(cf., Matter of Meadowbrook Nursing Home v Axelrod,* 116 AD2d 837; *Matter of Sturman v Ingraham,* 52 AD2d 882, *supra).* While the application of other regulatory criteria might have supported approval of petitioner's proposed facility, this by no means established that the contrary determination was irrational or lacked substantial evidentiary support *(see, Matter of Baird v Axelrod,* 102 AD2d 972, 973, *affd* 65 NY2d 655). Consequently, the determination must be confirmed and the petition dismissed.

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Kane, Casey, Levine and Harvey, JJ., concur.